IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Tony Brian Morgan, ) | Civil Action No. 2:11-2922-DCN-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, ) | **OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Tony Brian Morgan, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 43 years old on the alleged disability onset date of January 27, 2008. (R. at 17, 21.) The plaintiff claims disability due to an anxiety disorder as well as chronic obstructive pulmonary disease (COPD) or emphysema with an asthmatic component. (R. at 17.) The plaintiff has a high school education and has past relevant work as an overhead crane operator, material handler, fiberglass parts molder, and logger. (R. at 21-22.)

The plaintiff filed an application for DIB on March 17, 2008. (R. at 15.) His application was denied initially and on reconsideration. (R. at 15.) An Administrate Law Judge (ALJ) held a hearing on September 23, 2009. (R. at 15.) In a decision dated

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

December 18, 2009, the ALJ found that the plaintiff was not disabled. (R. at 15-23.) The Appeals Council denied the plaintiff's request for review, (R. at 1-3), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making her determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)     The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.
>
> (2)     The claimant has not engaged in substantial gainful activity since January 27, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*)
>
> (3)     The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD) or emphysema with an asthmatic component (20 CFR 404.1520(c)).
>
> (4)     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5)     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently. The claimant can stand or walk for about two hours per eight-hour workday and can sit for about six hours per workday. The claimant is unable to climb ladders, ropes or scaffolds, can only occasionally climb ramps or stairs, and can frequently balance, stoop, kneel, crouch and crawl. He must avoid exposure to extreme cold and even moderate exposure to fumes, odors, dusts, gases, poor ventilation and all allergy irritants.
>
> (6)     The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> (7)     The claimant was born on December 28, 1964 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).
>
> (8)     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

> (9)  The claimant has no skills that would transfer to other work and transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> (10)  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant number in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
>
> (11)  The claimant has not been under a disability, as defined in the Social Security Act, from January 27, 2008 through the date of this decision (20 CFR 404.1520(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. §423(a).  "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful

employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

4

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966).  Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational.  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends that the ALJ erred in failing to find him disabled.  Specifically, the plaintiff alleges that the ALJ erred in (1) failing to find that his impairments, meet and/or equal the criteria of Listing 3.02; (2) not ascribing controlling weight to the opinions of his treating physician; (3) failing to properly assess his credibility; and (4) assessing his residual functional capacity.

The Court will address each alleged error in turn, as necessary.

### I.     Listing 3.02

The plaintiff first contends that the ALJ failed to recognize that medical evidence established the presence of a disabling impairment listed in Section 3.02 of Appendix 1 to 20 C.F.R. § 404, Subpart P.  The plaintiff believes his chronic obstructive pulmonary disease qualifies.  In relevant part, section or Listing 3.02 states:

> **3.02 Chronic pulmonary insufficiency**
> A. Chronic obstructive pulmonary disease due to any cause, with the FEV1 equal to or less than the values specified in table I corresponding to the person's height without shoes. (In cases of marked spinal deformity, see 3.00E.) . . .

20 C.F.R. pt. 404, Subpart P, App. 1 § 3.02.

The plaintiff accuses the ALJ of only considering Listing 3.03, entitled "Asthma."  (See R. at 18.)  The defendant responds that the ALJ, in fact, made express reference to Section 3.02, in his analysis.  (R. at 18.)  The plaintiff is right, however, that such reference was in the context of the ALJ's application of Listing 3.03.  Nevertheless, Section 3.02 was necessarily considered.

5

> To be more clear, Listing 3.03 states:
>
>> **3.03 Asthma.** With:
>> A. Chronic asthmatic bronchitis. Evaluate under the criteria for chronic obstructive pulmonary disease in 3.02A;
>>
>> Or
>>
>> B. Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. pt. 404, Subpart P, App. 1 § 3.03. Subsection (A) of Listing 3.03 craves specific reference to, and application of, Listing 3.02(A), without qualification. Listing 3.02(A) is the subsection that the plaintiff would now argue his impairments satisfy and that he contends the ALJ failed to consider. But, by regulation, to apply Listing 3.03 is necessarily to consider the criteria of Listing 3.02(A).

And, so the ALJ did. In his Listing analysis he says, plainly, "[T]he record does not demonstrate that the claimant's COPD is characterized by chronic bronchitis with chronic pulmonary insufficiency . . . ." (R. at 18.) This phrase is a direct consideration of 3.02(A). It acknowledges the plaintiff's alleged impairment, COPD and, then, rejects that it is marked by "chronic bronchitis," (the criteria of 3.02(A)) accompanied by "chronic pulmonary insufficiency" (the actual impairment title of the Listing). *See* 20 C.F.R. pt. 404, Subpart P, App. 1 § 3.02. However brief, this is a specific conclusion regarding the applicability of 3.02(A)

As some evidence that only Section 3.03 was considered, the plaintiff would emphasize that the ALJ also noted an infrequency of asthmatic attacks, as a basis to reject that the Listing had been satisfied, which is a 3.03(B) criteria. (R. at 18.) But, because Listing 3.03 may be met through satisfaction of either its subsections, (A) or (B), the ALJ was required to so proceed. The Court may very well be confused about it, but the ALJ's consideration of subsection (B) does not seem to change the clear evidence in the decision

that his consideration of Subsection (A) of Listing 3.03, by necessity, required of him a full consideration of Listing 3.02(A), which the plaintiff now contends was overlooked.

The defendant has essentially made this same point and the plaintiff had great indignation for it. The undersigned may be misled. But, the conclusion seems, somehow, inescapable.

The question remains, however, whether the ALJ was *right* – that the plaintiff cannot satisfy the Listing. As is typical, the Listing analysis is not involved. The undersigned has seldom required more. But, it is certainly true that an ALJ's analysis must reflect a comparison of the symptoms, signs, and laboratory findings concerning the impairment, including any resulting functional limitations, with the corresponding criteria set forth in the relevant listing." *Huntington v. Apfel*, 101 F. Supp.2d 384, 391 (D.Md. 2000) *(citing Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)).

Listing 3.02(A) includes a table, which indicates what the "$FEV_1$ pre-bronchodilator" test results must be at various corresponding heights. *See* 20 C.F.R. pt. 404, Subpart P, App. 1 § 3.02. At the plaintiff's height, 70 inches, Table I requires that his FEV level be 1.55L or lower. *Id*. The plaintiff has put forward evidence that include readings of 1.31, 1.40, 1.46, 1.53, 1.54, 1.58, 1.60, 1.63, 1.66. (R. at 231, 247, 323, 326, 466.) In fact, the ALJ, himself, noted a number of these qualifying readings. (R. at 20-21.)

But, the defendant responds that the *highest* values of an FEV test from any particular test trial should be used to assess the severity of the respiratory impairment, not the *lowest*. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.00E; *see also Gwizdala v. Comm'r of Soc. Sec.*, 1999 WL 777534, at *4 (6th Cir. 1999). The plaintiff does not seem to disagree. Accordingly, any test trial, which contains readings both above and below 1.55, must be considered as non-qualifying for purposes of the Listing criteria. The defendant concedes that on two occasions the best FEV reading was, indeed, below 1.55. (R. at 231, 326-28.) But, the defendant contends that those tests are invalid because no *post*-bronchodilator test results were obtained. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.00E

7

("Pulmonary function studies performed to assess airflow obstruction without testing after bronchodilators cannot be used to assess levels of impairment in the range that prevents any gainful work activity, unless the use of bronchodilators is contraindicated."); *see also Taylor v. Apfel*, 2002 WL 483529, at *7 (S. D. Ohio Mar. 13, 2002).

It should be noted that this was not any consideration raised by the ALJ to discount the test results. And, the plaintiff counters that the ALJ considered some of the results from March and May of 2008 and February of 2009 and only one of the tests included a post-bronchodilator result. (R. at 20-21.)

The problem, of course, is that the ALJ's analysis is obscured. None of these matters are actually discussed at step two. (See R. at 18.) And, to the extent they were meant to be implicit in the recitation of medical evidence at pages 6 and 7 of the decision (R. at 20-21), they remain hidden from this Court's ability to review. The matter is not a fully post-hoc rationalization but it is sufficiently more elaborate than anything included in the decision to be essentially unreviewable. To the extent the ALJ, himself, relied on some tests that did not include a post-bronchodilator result, it seems hard to imagine that this was some grounds for him having rejected otherwise qualifying FEV readings.

Moreover, other rationalizations, including the plaintiff's improvement, were clearly not any sort of rationale, identified by the ALJ, for rejecting the applicability of the Listing, and will not be entertained. (R. at 18); *see Golembiewski v. Barnhart*, 322 F.3d 912, 915-16 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."); *Steel v. Barnhart*, 290 F.3d 936 (7th Cir. 2002) ("But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ.").

Albeit reservedly, the Court is persuaded to recommend remand for a more thoroughly considered Listing analysis.

**II.     Treating Physician**

The plaintiff next contends that the ALJ improperly rejected the opinions of his treating physician, Dr. Khizar Kahn. On August 2, 2009, Dr. Khan completed a Physician's Statement for Morgan. (R. at 376-77.) Dr. Khan noted that the plaintiff suffered generalized anxiety and panic disorders. *Id*. He indicated that the plaintiff remained anxious, nervous, tense and overwhelmed. *Id*. Dr. Khan identified mild restrictions in activities of daily living and mild difficulties in maintaining social functioning. *Id*. The statement showed moderate difficulties in maintaining concentration, persistence, or pace. *Id*. The plaintiff was noted to have had one or two episodes of decompensation of extended duration. *Id*. Dr. Khan's functional capacity assessment stated that the plaintiff was anxious, overwhelmed, tense and had multiple psychosocial stressors. (R. at 376-377.)

The ALJ discounted Dr. Khan's opinion because it was not supported by Dr. Khan's own treatment notes. (R. at 17-18.) He believed that Dr. Khan's opinion was inconsistent with the objective medical evidence. (R. at 18.) In his treatment notes, Dr. Khan did not indicate that the plaintiff had any significant limitations. Instead, the plaintiff reported to Dr. Khan that his symptoms improved with prescribed medications. (See R. 343-45; 378-80). The ALJ also considered the plaintiff's treatment relationship with Dr. Khan in that he only saw the plaintiff on seven occasions, all but two of which were 15 minute "medication checks." (R. at 18, 343-44, 378-80.) The ALJ also found Dr. Khan's opinion inconsistent with the plaintiff's hearing testimony. (R. at 18.) The plaintiff admitted that the only problem affecting his ability to work was his breathing problems. (R. at 48, 57.) During the administrative proceedings, the plaintiff did not claim that he had any work-related functional limitations stemming from his mental condition. (See R. at 274.)

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R.

9

§416.927(d)(2)(2004); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). A "medical opinion," is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. A treating physician's opinion may be assigned little or no weight if it is conclusory. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir.1996).

For starters, the plaintiff admits that Dr. Khan's treatment notes do not document episodes of decompensation, reasonably conceding that the ALJ's finding of inconsistency had some evidentiary basis. (Pl. Brief at 26.) The plaintiff quickly emphasizes, however, that Dr. Khan's notes certainly indicated prominent panic and anxiety symptoms, generally. (R. at 344-47.)

The plaintiff additionally recommends that Dr. Cathy Hurray's opinion corroborated Dr. Khan's assessment because she noted the plaintiff's anxiety and depression as well. (R. at 239, 316, 318.) There is some disagreement between the parties as to whether or not Dr. Hurray thought as much of these alleged symptoms as the plaintiff contends, including whether or not she affirmatively referred the plaintiff to the specialist, Dr. Khan, or whether she did so only at the plaintiff's request.

The plaintiff has also argued that Dr. Khan, in fact, contrary to the ALJ's suggestion, treated him sufficiently to render the opinion that he did. He argues that Dr. Khan certainly observed the plaintiff more than the state agency physicians, whose opinion the ALJ did accept.

All of this, however, is generally just a quibble of evidence, which, by standard of review, the Court cannot resolve. There is no misstatement of fact or clear legal error in the ALJ's analysis or rationale provided. The fact that the plaintiff might view the evidence

10

differently or provide other evidence from which a different conclusion might be drawn is simply of no moment.  *See Blalock*, 483 F.2d at 775.

But, more importantly, the essential failing of the plaintiff's appeal is that he nowhere suggests what mental functioning limitations should have been included in the residual functional capacity assessment but were not.  Dr. Khan's opinion certainly does not offer any.  The record only suggests characterizations like, "mildly irritated and anxious" or "slightly guarded and his speech was under-productive" (R. at 346-47) or "mild restrictions to activities of daily living" (R. at 376-77).  There are no functional limitations prescribed.  And, this is essentially what the ALJ concluded.  (See R. at 18 ("[H]e had no work-related limitations of function due to his mental condition.")  So, even as the record might corroborate the presence of anxiety symptomology, that is not the same as evidence of functional limitation resulting therefrom.   Thus, even if some technical error exists, the Court could not view it as anything more than harmless.  *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error").  There is no evidence that additional limitations should have been included in the RFC for any mental impairment in depression or anxiety, identified by Dr. Khan.

The Court could not recommend any reevaluation of the Dr. Khan's opinion on remand.

### III.     Plaintiff's Credibility and Residual Functional Capacity Assessment

The plaintiff makes a number of objections to the ALJ's consideration of his credibility and residual functional capacity ("RFC").  One seems dispositive.  Namely, the plaintiff has identified what appears to be a plain misstatement of the record testimony by the ALJ.  Specifically, the ALJ, in finding the plaintiff's testimony less than credible, concluded that, inconsistent with his representative's allegations (at hearing presumably) that he required breathing treatment seven to twelve times per day, the plaintiff himself only testified to three or four breathing attacks *per week*.  (R. at 19.)  This is not true.  The plaintiff's testimony is

relatively clear in this regard. He testified to needing "*oxygen*" treatments "three or four times a week." (R. at 47 (emphasis added).) But, there is no dispute that an oxygen treatment is not the same as a nebulizer treatment. The plaintiff testified to both. *See id.* And, regarding nebulizer treatments, he indicated that he required them as much as four to six times a day. (R. at 54-55.) Accordingly, the ALJ's misinterpretation potentially and grossly underestimates the number of attacks the plaintiff experiences.

The ALJ, summarily in the first instance (R. at 19), and the defendant on appeal again echoes, that any missinterpretation of the testimony, in this regard, is immaterial insofar as the medical record does not support either frequency. The plaintiff, however, has put forward evidence. For example, a Dr. Marie A. Cayelli reported that the plaintiff did indeed use oxygen occasionally during the day as well as at night, and he was oxygen dependent. (R. at 372-73.) On December 12, 2008, Dr. Cayelli also indicated that the next step for Morgan would be daytime oxygen or persistent steroids. (R. at 372-373.)

There is also evidence that suggests the nebulizer treatments were not effective. On May 6, 2009, the plaintiff was seen in the Emergency Department because Albuterol, nebulization and oxygen only provided partial relief and he required IV fluids and medications. (R. at 434-435.) On August 15, 2009, the plaintiff was seen for dyspnea because the Albuterol and Atrovent nebulization had provided no relief. (R. at 446.) This evidence, even if only by implication, begins to suggest a threshold number of nebulization attempts.

The ALJ, by contrast, made no explanation of his statement that the medical evidence failed to support the alleged frequency of attacks. (See R. at 19.) The Court assumes that the ALJ would rely, at least in part, on evidence of fairly normal oxygen saturation levels on various occasions and other signs of good pulmonary health, which he subsequently referenced. (R. at 20.)

As with the physicians' opinions, before, the Court would normally not mediate the contest as between these evidentiary presentations – the plaintiff's now and the ALJ's then.

But, this circumstance is different. The ALJ has made a fairly plain misapprehension of the testimony, which the Court cannot affirm. And, because the ALJ does not do a fulsome job of defending his alternative ruling – that no frequency is supported in the record – the Court cannot affirm that basis either. While not a dynamic proffer, the plaintiff has offered, as indicated above, at least some countervailing evidence that might begin to substantiate his own testimony as to the degree of frequency alleged. Moreover, the defendant has said essentially nothing about it in reply.

This narrow error touches and concerns both the credibility determination and ultimately the RFC. Accordingly, both should be reopened on remand. Other objections need not be considered. The Court would say that it has reviewed all such objections and its comfort with respect to them forming other bases for remand is less strong.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court cannot conclude that the ALJ's decision to deny benefits was supported by substantial evidence. It is therefore RECOMMENDED, for the foregoing reasons, that the Commissioner's decision be reversed and remanded to the Commissioner under sentence four of 42 U.S.C. Section 405(g) for further proceedings as set forth above. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO RECOMMENDED.

s/BRUCE H. HENDRICKS  
UNITED STATES MAGISTRATE JUDGE

January 30, 2013  
Charleston, South Carolina